**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780

June 9, 2020

LETTER TO COUNSEL

RE: *Theresa J. v. Saul*
Civil No. SAG-19-2075

Dear Counsel:

On July 16, 2019, Plaintiff Theresa J. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF No. 1. I have considered the parties' cross-motions for summary judgment and Plaintiff's reply. ECF Nos. 10, 11, 12. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed her claim for benefits on May 5, 2016, alleging a disability onset date of May 24, 2015. Tr. 152-58. Her claim was denied initially and on reconsideration. Tr. 79-82, 86-87. A hearing was held on May 23, 2018, before an Administrative Law Judge ("ALJ"). Tr. 32-59. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 15-26. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that Plaintiff suffered from the severe impairments of "gastroparesis, slow gut constipation, cubital tunnel syndrome, restless leg syndrome, and chronic venous insufficiency." Tr. 17. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except with additional restrictions. The claimant can lift and carry, push and pull 20 occasionally and 10 pounds frequently; can stand and walk for 6 hours of an 8-hour workday; can sit for 6 hours of an 8-hour workday; can frequently handle bilaterally; can frequently stoop, climb ramps and stairs, balance, kneel, crawl and crouch, and can never climb ladders, ropes, and scaffolds.

Tr. 20. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a pharmacist and a pharmacist manager. Tr. 25-26. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

Plaintiff raises two primary arguments on appeal: (1) that the ALJ's step-two finding that her anxiety and depression were not severe impairments was not supported by substantial evidence; and (2) that the ALJ improperly weighed the medical opinions of her treating physicians. ECF No. 10 at 10-22. Neither argument has merit for the following reasons.

Plaintiff first challenges the ALJ's step-two finding that her anxiety and depression were not severe impairments. ECF No. 10 at 10-12. An impairment is considered "severe" if it significantly limits the claimant's ability to perform "basic work activities," defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522. Examples of basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers and usual work situations," and "[d]ealing with changes in a routine work setting." *Id*. The claimant bears the burden of proving that her impairment is severe. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)).

Here, at step two, the ALJ provided a thorough discussion of Plaintiff's treatment records for her anxiety and depression:

> The claimant treated her anxiety and depression with medication and therapy at Joshi & Merchant, MDPA beginning around November of 2015. At that time, she reported suffering from "anxieties since she was kid." At an appointment on May 5, 2016, the claimant indicated she intended to retire on May 20, 2016. In September 2016, the claimant reported that she was doing fair, that she was not depressed most of the time, and that overall, she was coping well. Although the claimant reported that she avoids going out, she routinely attributed that to fear of a gastrointestinal accident. The claimant saw improvement with therapy and medication and, by July 2017, reported a stable mood. In January 2018 she reported she was "relatively stable" and the medications were helping. A mental status examination revealed an alert claimant with appropriate thought content and process, a stable mood, and no depressive symptoms. By March 2018, the claimant reported her mood was good, she was exercising, and doing word puzzles. Throughout claimant's treatment record, GAF scores were routinely 65 or above.
>
> On September 15, 2016, the claimant was seen by Tamara L. Levin, Psy.D. for a psychiatric consultative examination. The claimant appeared on time for the appointment well groomed and dressed appropriately. She was engaged, focused, cooperative, and maintained good eye contact. She walked with a cane but her gait and posture were within normal limits. She was oriented to person, place, and time, and appeared to have good judgment and insight into how her symptoms are impacting her current functioning. She successfully completed serial 7's, 3 digits forward and backward, simple math, naming objects, and repeated a short sentence.

> Additionally, she obtained a score of 30 on the Mini Mental State Examination-2. Although the claimant reported being depressed and anxious, she also attributed the worsening of her symptoms to her slow gut constipation issue. Dr. Levin's report indicates claimant performs activities independently without reminders, she gets along well with others, she can follow simple instructions, and it takes her longer to do things.

Tr. 18 (internal citations removed). The ALJ then evaluated Plaintiff's mental impairments using the regulation's "special technique" for rating a claimant's degree of limitation in four broad areas of mental functioning. Tr. 18-19; *see* 20 C.F.R. § 404.1520a(b)(c)(2) (explaining that an ALJ will assign a rating to each functional area based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis."). "If [the SSA] rate[s] the degrees of [a claimant's] limitation as 'none' or 'mild,' [it] will generally conclude that [her] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [her] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). The ALJ found that Plaintiff had only a mild limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace), and no limitation in her ability to adapt or manage herself, Tr. 18-19, and therefore concluded that her mental impairments were not severe under Social Security law. Tr. 19.

Plaintiff argues that the ALJ failed to support his step-two finding with substantial evidence. ECF No. 10 at 10-13 (citing to treatment records and the opinions of her treating psychiatrist, Dr. Joshi, and consultative examiner, Dr. Levin). Plaintiff does not argue that the ALJ failed to consider the relevant evidence; rather, Plaintiff argues for a different interpretation of the evidence. *See id.* In response to the Commissioner's argument that Plaintiff is essentially asking the Court to reweigh the evidence, ECF No. 11 at 5, Plaintiff insists that "[w]hen the 'whole record' is carefully scrutinized, there is a lack of substantial evidence to support the ALJ's finding that [Plaintiff's] mental impairments were not severe," ECF No. 12 at 2. However, "[substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Here, the ALJ provided a thorough discussion of the relevant evidence and his finding that Plaintiff's mental impairments were not severe impairments is supported by substantial evidence. *See* Tr. 18-19.

Plaintiff specifically argues that the ALJ "fail[ed] to explain how a limitation to simple instructions supports [a finding of no severe mental impairment.]" ECF No. 10 at 11; ECF No. 12 at 3 ("[Plaintiff] submits that the ability to perform [tasks like serial 7s and simple math] is consistent with Dr. Levin's assessment that she is limited to carrying out 'simple instructions,' and therefore consistent with a mental impairment that caused more than minimal limitation in her ability to perform basic mental work activities."). First, Dr. Levin's report notes that Plaintiff was able to follow simple instructions; it did not limit her to simple instructions.[1] *See* Tr. 487.

---

[1] Nor would the ALJ be required to adopt such a finding had it been made. In the RFC assessment, the ALJ appropriately considered Dr. Levin's consultative report and gave her opinion limited weight. Tr. 24 ("Dr.

Moreover, the regulations specifically include "[u]nderstanding, carrying out, and remembering simple instructions" an example of a basic work activity. 20 C.F.R. § 404.1522(b)(3); *see also* Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 ("The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs.").

Plaintiff additionally asserts that the ALJ would have included mental limitations in her RFC had the ALJ found that she had a severe mental impairment. ECF No. 10 at 13. However, "there is no requirement that every severe impairment correlate with a particular restriction in the RFC assessment." *Lockard v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-16-3010, 2017 WL 2804896, at *1 (D. Md. June 28, 2017). In any event, the ALJ considered all of Plaintiff's impairments – severe and non-severe – in the RFC assessment. *See* Tr. 21-25; 20 C.F.R. § 416.945(a)(2); *see also* Tr. 65-66, 75-76 (State agency consultants' conclusions that Plaintiff's anxiety and depression were "not severe.").

Second, Plaintiff argues that the ALJ improperly weighed her treating physicians' opinions that her impairments caused significant physical and mental limitations, and discredited their opinions without providing good reasons. ECF No. 10 at 14-22. Under 20 C.F.R. § 404.1527(c),[2] an ALJ will give "controlling weight" to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if he finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." The regulations require that an ALJ "give good reasons . . . for the weight [he] give[s] [a claimant's] treating source's medical opinion." *Id*. As the Fourth Circuit has explained, "if a physician's opinion is not supported by the clinical evidence or if it [was] inconsistent with other substantial evidence, it should be accorded significantly less weight." C*raig*, 76 F.3d at 590. An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 Fed. App'x 264, 267 (4th Cir. 2015) (citations omitted).

Here, the ALJ discussed and assigned weight to the opinions of record, including the opinions of Plaintiff's treating providers, Gregory Lavikas, M.D. and Milan Joshi, M.D. *See* Tr.

---

Levin's opinions that the claimant can follow simple instruction and that it takes her longer to do things are not supported by the claimant's own report or Dr. Levin's own findings. Specifically, the claimant reported no difficulty following spoken or written instruction and Dr. Levin indicated the claimant successfully completed serial 7's, 3 digits forward and backward, simple math, naming objects, and repeating a short sentence. Nothing in Dr. Levin's report indicates the claimant required additional time to complete these tasks, and, alternatively, Dr. Levin notes the claimant was oriented, focused, and engaged and the claimant's comprehension, reading, writing, and drawing were all intact.").

[2] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. It was replaced by § 404.1527c for claims filed on or after March 27, 2017. Plaintiff's claim was filed in 2015.

23-25. The ALJ gave partial weight to three opinions from Dr. Lavikas.[3] The ALJ explained his assignment of partial weight because the record supported Dr. Levickas's opinion that "the claimant can sit for 6 hours in an 8-hour day and she can lift and carry up to 20 pounds," but he found her "exertional and nonexertional limitations to be less severe" than Dr. Levickas opined. Tr. 23. The ALJ noted Dr. Levickas's opinions that Plaintiff "would need to lie down during a normal workday" and that she "would be absent more than 4 times per month," but found that they were inconsistent with her physical examination findings, including subjective and objective reports of improvement, and her activities of daily living. *Id*.

Plaintiff takes issue with the ALJ's statement that she experienced improvement and cites to treatment records that demonstrate ongoing symptoms. ECF No. 10 at 15-17. The ALJ noted Plaintiff's symptoms, Tr. 21-22, and cited to records that noted improvement, Tr. 22-23; *see, e.g.*, Tr. 378 (noting nausea "considerably improved"); Tr. 769 (noting "dramatic improvement" regarding slow transit constipation and "now having daily bowel movements with occasional loose stools"); Tr. 807 (noting Plaintiff "98% satisfied with the management of her restless leg syndrome"); Tr. 809 (noting nausea "well controlled" and somnolence "improved"); *see also* Tr. 47 (Plaintiff testimony that her restless leg syndrome is "pretty well controlled"); Tr. 48 (Plaintiff testimony that her venous insufficiency "seems to be doing okay," and that her cubital tunnel syndrome "responded well to surgery"). The ALJ's assignment of partial weight to Dr. Lavickas's opinions is supported by substantial evidence, and the Court will not disturb it.

The ALJ gave little weight to the opinion of treating psychiatrist, Dr. Joshi, that Plaintiff was markedly limited in her mental functioning because it was "inconsistent with Dr. Joshi's own treatment records, the claimant's reported activities of daily living, and Dr. Levin's assessment of the claimant." Tr. 25. The ALJ noted that "Dr. Joshi's own treatment records are replete with GAF scores over 65, as well as indications and assessments the claimant was alert, self-aware, stable, and the medications were helping." *Id*. Plaintiff argues that the record demonstrates otherwise. ECF No. 10 at 20-22. Plaintiff's argument essentially asks the Court to reweigh the evidence, which it is not allowed to do.

Although Plaintiff argues that the ALJ "relied upon the reported GAF scores" to discredit Dr. Joshi's opinion that her mental functioning was significantly limited, ECF No. 10 at 20, the ALJ explained that Dr. Joshi's opinion was inconsistent with Plaintiff's testimony, activities of daily living, and treatment notes indicating normal functioning and good responses to medication. *See* Tr. 25. Moreover, the ALJ acknowledged that a GAF score "represents the subjective opinion of one clinician, on one day, at a single point in time" and that "the score may vary from day to day, time to time." *Id*. He cited to seventeen GAF scores in Plaintiff's record and explained that he gave them "some weight because they [were] consistent with and supported by narratives contained within the treatment records with Joshi and Merchant noting stability." Tr. 24.

---

[3] The ALJ gave no weight to Dr. Levickas's April 2016 opinion that "[Plaintiff] [was] becoming increasingly unable to perform because of her medical problems" and that she was a "[p]otential candidate for disability," Tr. 552, because it "provide[d] no specifics as to the claimant's functional limitations and [was] merely an evaluation of whether the claimant is disabled – an issue specifically reserved to the Commissioner." Tr. 22.

*Theresa J. v. Saul*
Civil No. 19-2075-SAG
June 9, 2020
Page 6

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ supported his conclusions with substantial evidence, and remand is unwarranted.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 10, is DENIED, and Defendant's Motion for Summary Judgment, ECF No. 11, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge